# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

BENJAMIN ANDREW LAIGO, III,

                Plaintiff,

v.

KING COUNTY, *et al.*,

                Defendants.

Case No. C16-1541-TSZ-MAT

REPORT AND RECOMMENDATION

## INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights action proceeding under 42 U.S.C. § 1983. Plaintiff Benjamin Laigo is a state prisoner who is currently incarcerated at the Coyote Ridge Corrections Center in Connell, Washington. Plaintiff's civil rights claims arise out of a previous period of incarceration at the King County Jail in Seattle, Washington. Plaintiff's complaint is repetitive, and somewhat confusing, but the gist of his claims is that defendants failed to adequately address serious injuries plaintiff suffered in an automobile crash which immediately preceded his arrest. Plaintiff seeks declaratory and injunctive relief, and damages.

Plaintiff identified numerous defendants in his complaint, but the only defendants remaining at this juncture are Dr. Sagi, a physician at Harborview Medical Center, and King

REPORT AND RECOMMENDATION - 1

County. Dr. Sagi now moves for summary judgment. Plaintiff has been advised of the summary judgment requirements pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), but has filed no response to Dr. Sagi's motion.[1] The Court, having reviewed Dr. Sagi's summary judgment motion, and the balance of the record, concludes that the motion should be granted, and that plaintiff's complaint and this action should be dismissed with respect to all claims asserted against Dr. Sagi.

## BACKGROUND

Plaintiff was involved in a head-on car collision in early November 2015, and was admitted to Harborview Medical Center ("HMC") for treatment of his injuries.[2] (*See* Dkt. 4 at 3, Dkt. 24 at 2.) According to plaintiff, he was in the custody of the King County Jail (KCJ) at the time he was admitted to HMC. (Dkt. 4 at 3.) Doctors in the Emergency Department at HMC diagnosed plaintiff with a posterior hip dislocation and referred him to Dr. Sagi, an orthopedic trauma surgeon at HMC. (Dkt. 24 at 1-2.) Dr. Sagi met with plaintiff to discuss the injury and the treatment options, and plaintiff consented to surgical repair of his orthopedic injuries. (*See id.* at 2.) The surgery was performed on November 12, 2015 without complication. (*Id.*)

According to plaintiff, he was discharged from HMC on November 17, 2015, at the behest of KCJ officials, despite being told by his doctors that it would take weeks for his injuries to heal.

---

[1] Plaintiff recently filed a motion for an extension of the discovery and dispositive motion filing deadlines in this case. (*See* Dkt. 28.) He bases his request for additional time on the fact that he did not have access to his legal materials while in the receiving unit at the Washington Corrections Center ("WCC"), and that there was a delay in transferring those materials from WCC to his current facility. (*See id.*) Plaintiff does not appear to request a continuance of the instant summary judgment motion in his motion for extension of time. However, in the event that plaintiff intended to do so, the Court notes that a continuance of Dr. Sagi's motion would be inappropriate given that the motion was originally filed in November 2016 while plaintiff was apparently still confined at the King County Jail, and that plaintiff has had ample time, even allowing for his transfers between facilities, to file a response.

[2] Plaintiff asserts in his complaint that the accident occurred on November 9, 2015, while Dr. Sagi states in his declaration in support of his motion for summary judgment that plaintiff was admitted to HMC on November 8, 2015. (*See* Dkt. 4 at 3, Dkt. 24 at 2.)

REPORT AND RECOMMENDATION - 2

(*See* Dkt. 4 at 3, 5.) Plaintiff maintains that once he arrived at the KCJ, he was placed in a unit where he was required to get in and out of bed to receive his medication and to use the restroom, despite not being able to walk or bear weight on his injured leg/hip. (*See* Dkt. 4 at 6.) Plaintiff also complains that his wheelchair was prematurely withdrawn by KCJ staff, that he was prematurely cut-off from pain and nerve damage medications, that the KCJ failed to provide proper transportation to court and to HMC for follow-up appointments, that he was denied proper shower access at the KCJ during his recovery, and that he was not provided any proper physical therapy. (*Id*. at 12-13, Dkt. 4-1 at 1-3.) Plaintiff asserts that as a result of the many deficiencies in the care provided for his injuries at the KCJ, he has not healed properly and has suffered a significant amount of pain. (*See id*.)

While the bulk of plaintiff's claims pertain to actions of KCJ officials and staff, plaintiff also asserts a number of claims against Dr. Sagi. Specifically, plaintiff asserts that Dr. Sagi failed to provide adequate follow-up care, that Dr. Sagi and his staff were negligent in performing plaintiff's surgery, and that Dr. Sagi acted improperly in releasing plaintiff early from HMC. (Dkt. 4 at 13, Dkt. 4-1 at 1, 3, 4.)

## DISCUSSION

Dr. Sagi argues that summary judgment is warranted because the treatment he provided plaintiff was reasonable, he was not deliberately indifferent to plaintiff's medical needs, and there is no evidence that he caused plaintiff any harm. (Dkt. 23 at 3.) As noted above, plaintiff offers no argument or evidence in opposition to Dr. Sagi's summary judgment motion.

### Summary Judgment Standard

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there exists "no genuine dispute as to any material fact" such that "the

movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Material facts are facts which might affect the outcome of the pending action under governing law. *See Anderson*, 477 U.S. at 248. Genuine disputes are those for which the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id*.

In response to a properly supported summary judgment motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial and must produce evidence sufficient to establish the existence of the elements essential to his case. *See* Fed. R. Civ. P. 56(e). A mere scintilla of evidence is insufficient to create a factual dispute. *See Anderson*, 477 U.S. at 252. In ruling on a motion for summary judgment, the court may not weigh the evidence or make credibility determinations. *Id*. at 248.

### Section 1983 Standard

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

### Inadequate Medical Care

Plaintiff alleges in this action that Dr. Sagi was deliberately indifferent to his serious

medical needs in violation of his federal constitutional rights. When a claim of inadequate medical care is brought by a pretrial detainee, the claim arises under the Due Process Clause of the Fourteenth Amendment, but is properly analyzed under Eighth Amendment standards.[3] *See Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1243-44 (9th Cir. 2010); *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

In order to establish an Eighth Amendment violation, a plaintiff must satisfy a two-part test containing both an objective and a subjective component. The Eighth Amendment standard requires proof that (1) the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation; and (2) the defendant acted with a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective component of an Eighth Amendment claim is "contextual and responsive to 'contemporary standards of decency.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). The state of mind requirement under the subjective component of the Eighth Amendment standard has been defined as "deliberate indifference" to an inmate's health or safety. *Farmer*, 511 U.S. at 834.

The Ninth Circuit has explained that "[p]rison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation marks omitted). "[A] serious medical need is present whenever the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002). It is well established that a mere difference of opinion concerning proper medical care is not sufficient to establish deliberate indifference. *Jackson v.*

---

[3] Dr. Sagi indicates in his summary judgment motion that he believes plaintiff was being detained at the KCJ on this occasion both for probation violations related to a recent prison release, and for new charges as a pre-trial detainee.

REPORT AND RECOMMENDATION - 5

*McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)).

Plaintiff alleges in his complaint that Dr. Sagi failed to check for damage to his surgically repaired leg and hip after he reported to Dr. Sagi during a follow-up appointment that he had fallen in the shower at KCJ. (Dkt. 4 at 13, Dkt. 4-1 at 1.) Plaintiff alleges as well that he told Dr. Sagi, again during a follow-up appointment, that he was experiencing both numbness and nerve pain in his right leg and hip, but that Dr. Sagi disregarded the complaint and failed to perform any follow-up tests. (Dkt. 4-1 at 1.) According to plaintiff, the only thing Dr. Sagi did in response to the complaints was to acknowledge that he would continue to prescribe gabapentin for nerve pain. (*Id*.) Finally, plaintiff alleges that Dr. Sagi was negligent in performing the surgery, though plaintiff fails to elaborate on precisely how Dr. Sagi was negligent, and he also appears to assign some fault to Dr. Sagi for what plaintiff believes was an early release from HMC. (*See id*. at 3-4.)

Dr. Sagi acknowledges in his summary judgment motion that the injuries plaintiff suffered in the car accident were serious. (*See* 23 at 4.) Dr. Sagi states in his declaration in support of his motion that when he first saw plaintiff, he diagnosed "a right femoral head fracture and right posterior wall acetabular fracture-dislocation," injuries which are often seen in car accident cases. (Dkt. 24 at 2.) Dr. Sagi explains that the treatment for this injury consisted of "an open reduction and internal fixation ("ORIF") of the right posterior wall acetabular fracture, ORIF of the right femoral head fracture, open treatment of the right capsular and labral tear with repair of the labrum and capsule and a right trochanteric digastric osteotomy." (*Id*.) According to Dr. Sagi, the surgery proceeded without any complications. (*Id*.) Dr. Sagi maintains that once plaintiff's initial injuries were properly treated at HMC, no further serious medical needs of plaintiff's fell within his purview. (*See* Dkt. 23 at 4.)

REPORT AND RECOMMENDATION - 6

Dr. Sagi acknowledges that he did conduct follow-up visits with plaintiff after his surgery. (Dkt. 24 at 2.) With respect to plaintiff's claim that he told Dr. Sagi about a fall at the KCJ, and about numbness and nerve pain, Dr. Sagi notes that numbness and nerve pain are both symptoms of plaintiff's injury and there was no correctable orthopedic injury causing his pain. (Dkt. 24 at 2.) Dr. Sagi states that though he could not cure plaintiff's condition, he did prescribe gabapentin, a drug which addresses nerve pain. (*Id.* at 2-3.)

With respect to plaintiff's claims that Dr. Sagi failed to run tests during the follow-up appointments to see if plaintiff had nerve, ligament, hip, or femur damage, Dr. Sagi states that when he first saw plaintiff for follow-up, it was after plaintiff's surgery and during the acute recovery stages. (Dkt. 24 at 3.) According to Dr. Sagi, there were no medically indicated tests for nerve or other structural damage during that acute recovery period. (*Id.*) Plaintiff subsequently returned to Dr. Sagi with complaints of hip pain. (*Id.*) At that time, Dr. Sagi ordered x-rays, which were normal, and prescribed physical therapy. (*Id.*) Plaintiff apparently returned later, again complaining of hip pain, and Dr. Sagi ordered a CT of plaintiff's pelvis to investigate the complaints further. (*Id.*) Shortly thereafter, Dr. Sagi learned of this lawsuit and transferred plaintiff's care to a colleague in order to avoid any possible conflict of interest. (*Id.*)

To the extent plaintiff complains about the quality and scope of the follow-up care provided by Dr. Sagi, plaintiff has identified, at most, a difference of opinion concerning the proper medical care. As noted above, a mere difference of opinion concerning proper medical care is not sufficient to establish deliberate indifference. *See Jackson*, 90 F.3d at 332. To the extent plaintiff complains that Dr. Sagi was negligent in conducting the surgery, his complaint is conclusory in nature and, in any event, insufficient to implicate federal constitutional concerns. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating

REPORT AND RECOMMENDATION - 7

a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.") Finally, to the extent plaintiff asserts that Dr. Sagi was complicit in the decision to prematurely discharge him from HMC following his surgery, plaintiff offers no evidence that his discharge was premature or that Dr. Sagi played any role in the discharge decision.[4]

As plaintiff presents no evidence in this action demonstrating that Dr. Sagi was deliberately indifferent to his serious medical needs, Dr. Sagi is entitled to summary judgment.

## CONCLUSION

For the foregoing reasons, this Court recommends that Dr. Sagi's motion for summary judgment be granted, and that plaintiff's complaint and this action be dismissed with prejudice as to all claims asserted against Dr. Sagi. A proposed order accompanies this Report and Recommendation.

## DEADLINE FOR OBJECTIONS

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **May 5, 2017**.

///

---

[4] It is noteworthy that plaintiff's claim that Dr. Sagi was responsible for, or complicit in, plaintiff's early release from HMC contradicts assertions elsewhere in the complaint that KCJ officials were responsible for plaintiff's early release and that the actions of KCJ officials in this regard were contrary to the advice of plaintiff's medical providers at HMC.

REPORT AND RECOMMENDATION - 8

DATED this 12th day of April, 2017.

_____
Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9